We're going to keep Mr. Hillis busy. Our last case for this morning is United States against Olson. And we will hear again from Mr. Hillis. It's time for Mr. Olson. Thank you. May it please the court, counsel. Again, I'm Daniel Hillison with the Federal Public Defender's Office. I'm here for Mr. Olson. The judge committed an error in this case. She did not conduct the necessary colloquy to ensure a valid plea under Rule 11. And furthermore, the colloquy that she conducted. She never did in this case? Not at the relevant moment. And further, Your Honor, no, she didn't. Because if we go first to the September 26th proceeding, there's a glaring omission in the colloquy. And that There's a glaring omission in that the judge, in asking for the factual basis to establish the necessary element of the sexually explicit photos, has this colloquy, and it's in the record at pages 18 and 19, about Mr. Olson, what are these pictures of? Do you agree that they are sexually explicit images? It's a very ambiguous colloquy, and I agree with that. But I'll tell you that the thing on your side of this that bothers me the most is that on August 26th, he comes in and he moves to withdraw the guilty plea, and the district court grants that motion. So as far as I'm concerned, the guilty plea is off the table at that point, and any agreement that may have accompanied the guilty plea. The judge says, let's get ready to go to trial. There's no question that she thinks that she's reserving a ruling or anything. And so then a couple weeks later, September 9th, he's had another change of heart, he comes back in. Well, he's allowed to have another change of heart, but we don't know if there's an agreement. We don't know what the terms of the agreement would be. We don't know anything. And so even if you thought that the second plea was somehow voluntary, the lack of a colloquy, which is the point you've raised on September the 9th, seems to me a very severe problem. I agree entirely. And I think that goes right to the heart of this, that while the government has argued that it's a totality that you look at for the validity of the plea, that argument turns this process, the blanket protections of Rule 11 are turned into a say that there is a valid guilty plea. What happens if we agree with you and it goes back? He just goes back to square one. He either has a guilty plea or he has a trial by the looks of things, unless the government... You're going to go to trial with this case? Trial counsel will have to make a determination with the counsel. You won't go to trial with it. No, I'm only handling the appeal. And back to what you were saying, Judge Wood, the original plea of guilty came off the books. And so there is a necessity. Let me ask you, I won't ask you what you told your client, but he understands, I assume, that he's exposing himself to the entire sentence. Yes. Any time we have a guilty plea come off the books, as I said, clients understand, and for that matter, resentencing, that you are subject to whatever the judge may do at that moment in time. But again, the relevant events here, the guilty plea that was earlier entered has been vacated. The judge must then conduct a Rule 11 colloquy, and that didn't happen. So I tried to begin by explaining that the original proceeding was defective, and it was, but to the heart of it, the contemporaneous requirement of a valid Rule 11 colloquy at the time of the guilty plea, that was never satisfied. And that goes through the essential issue of this appeal. And the plea cannot stand in light of those things. And so the conviction needs to be vacated and the matter remanded. I will address the second issue in our brief in the event that that argument that I first made doesn't carry the day. And the supervised release was not calculated in court. Judge gave the 20 years, which we had agreed was there was a need for a significant period of supervision. But nobody ever said we agreed to 20 years. And the judge, when she imposed the period of supervision, made no calculations, summarily imposed it. And the plea agreement, when we apply the rule of the last antecedent, which I put in the brief and I heard mentioned earlier about there's some textualists on the Supreme Court and one of them spoke highly of the rule of the last antecedent in the book of his. He's a big fan of it. Yes, it's true. And it would be an argument that I think carries the day on this last, the second issue, because after the comma in the relevant sentence of the plea agreement, that's a limiting clause. It limits it only to the 180 month term of imprisonment. If he got that amount or less, you can't challenge the amount of imprisonment. But this isn't about the amount of imprisonment. This is about the amount of supervised release. And so that limiting clause is not applicable to bar the appeal here. The government wrote this plea agreement. If it wishes to go back and refashion its plea agreement, that's fine. But as this text stands, it does not prevent this appeal from going forward, doesn't stop the challenge, and relief can be given if we are successful on the Downs claim. I have nothing further unless the court has additional questions. All right. Thank you. Ms. Pfluger. May it please the court, counsel, Julie Pfluger on behalf of the United States. The way the government interprets this and the way that defense counsel, defendant and the judge interpreted this is that the September 9th hearing was not a change of plea hearing. But it was. I mean, I'm looking at the transcript of the earlier hearing where the judge grants the motion to withdraw the guilty plea, says, okay. I mean, she actually says, I think you're doing a really stupid thing to Mr. Olson, which he indeed may have been. And I'm not sure whether she even went over the line on that, but let's just leave that alone. She says, I'm granting the motion. You're going to get counsel as promptly as possible. And she says, and it's going to be as soon as a lawyer can be ready, we'll go to trial. There's nothing ambiguous about that. So I'm not familiar with the government leaving plea agreements open eternally. And this whole guilty plea went up in smoke when she grants the motion to withdraw it. And she's clearly understanding that they're going to go to trials. And then you have a new proceeding, September 9th, in which everybody's trying to unscramble the eggs, apparently. But I don't see how you can do that September 9th hearing. So suppose you're in the Rule 11 colloquy part that says, are there any agreements or understandings? I have no idea what the answer to that question would have been, whether the old agreement was still in effect, whether there was a new agreement, whether it was a blind plea. I mean, he certainly could have entered a blind plea on September the 9th, if that's what he wanted to do. I think it's just, you know, she got ahead of herself and made a mistake. And Your Honor, the government respectfully disagrees in that in the September 9th, in both of these hearings were ex parte, the government was not aware of them or what was going on in these hearings. In the September 9th ex parte hearing, this hearing was a three minute hearing. There was no, correct, as the court pointed out, there was no Rule 11. And exactly. And he says, it's just that I think my best course is just to throw myself at the mercy of the court. That sounds like a blind plea. And here the government is trying to hold him to terms of an agreement that may not even exist. So she's, so she suddenly says the motion to withdraw is denied, but she'd already granted the motion to withdraw. It's just senseless. Well, and I think perhaps there was a better way to handle this, but as it was handled, I think this was an erroneous way to handle it. So yes, there was a better way to handle it for sure, which is to go ahead and have a Rule 11 colloquy. Okay. Now you are deciding to plead. Let's find out what's going on. Has anybody promised anything to you since then? Are you still in command of your wits? Do you still have an agreement with the government? I think that when you get to the sentencing, it's clear that the plea agreement is still in effect because the judge pointed out, the defense attorney pointed out and explains portions of the agreement and how there's an appellate waiver, nothing's clear. He was never told at the critical moment when he's pleading guilty. I mean, you're just pulling this out of thin air, but it's, it just wasn't done the right way. Well, Your Honor, if that's the, I mean, you're certainly not going to do this again. Are you, I would put forward that the government didn't do this. We weren't aware of anything that was going on. This was all ex parte and this was all, and it's, and I'm not actually blaming the government for this. I'm saying the judge made a mistake in not saying you want to plead guilty again. Let's get the prosecutor in. Let's get everybody in. Let's do rule 11 again. And that would have happened. You would have had your, you or your colleagues would have had their voice and we wouldn't be here. Agreed, Your Honor. Um, I would also just like to say though, that as far as the withdrawing of the plea, I mean, he, he did, he did withdraw the plea and she granted the motion. She said, let's go to trial. And if the work, if that's the court's position, Your Honor, then this case would have to be remanded for a new change of plea. And as you have, Judge Kaney is absolutely right. I mean, this may be not the smartest move that Mr. Olson could make, but, and he will be subject to the production of child pornography and all the other, of course, it's an ugly case underneath all of this. Um, Well, the chances of this going to jury trial is minimal. Probably correct. Uh, would you, But if he had a blind plea, you know, on a retrial, at least it would be clear that his appellate rights would exist, whether he wanted to fuss about the sentence or supervised release or conditions or, you know, all of that does happen when there are blind pleas. There are no appellate waivers. I understand the court's position. I just would like to reiterate that the government saw it differently and that we saw these as two ex parte motions hearings. We thought the second one was a motions hearing where she did grant the first motion to withdraw and get new counsel. But then, uh, at the defense attorney's prompting said, I'm now denying those motions, let's move forward as if these had never happened. Now that if the court finds that's not a proper procedure, then there is an issue here. Okay. Would you like me to address this? You can certainly. As far as the supervised release, the defense rests on Downs. However, Downs was a different case. In this case, uh, the judge did adopt the PSR said the PSR had the correct calculations of the guidelines. It did have the correct calculations of the guidelines. The defendant had been informed multiple times that he had a five-year mandatory minimum of supervised release and the maximum of life. The defense counsel stated he should get a significant term and that's what he got. And there was no objection raised. The government does not believe that Downs says you must make an oral pronouncement at sentencing of the guidelines range of supervised release. There's no question the guidelines were calculated correctly and that they were adopted through the PSR. Uh, if the court, if the circuit would like district courts to specifically state that in the future, perhaps direction would be clear and the courts will specifically state those. So we don't face this issue again. Thank you. Thank you very much. Anything further, Mr. Hillis? The likelihood of this case going to trial, uh, it may be great given my client's age and the sentence that he's serving and the mortality, the end rate that people have once incarcerated, those may be driving features that have led to this decision, but it'll be for him to make at the right  I've understood the government to say, and I'm respectful of the panel's suggestion that it may be an unwise decision. We have clients who do those unwise things sometimes. Mr. Hillis, are you comfortable that the defendant is aware of possible changes, whatever he decides to do? There were a host of charges that were levied and all of them are prospectively in play again. And if the government has the production count that has a 180 month mandatory minimum sentence, that is the sentence that he got now. And apparently he's had misgivings about it just in the face of this case going forward on the appeal. That's clear enough. And yes, I believe that anybody who has had the charging document proceeded all the way through the proceedings as he has, is well aware of what these risks are, Your Honor. As for the government's explication of downs, downs says an in-court calculation of the range is required. It's an important part of sentencing. We would not allow the sentence of imprisonment to be satisfied by simply saying it was in the PSR, the calculations were correct, nobody objected to it. And so somebody comes in and they get a life term of imprisonment and it was correctly set forth in the PSR. That wouldn't be adequate. It can't be adequate that this other procedure for this portion of sentencing can satisfy what the in-court requirements are for valid sentencing, whether it's a term of imprisonment or it's a period of supervised release. Is it valid to say that I accept the recommendation and set forth in a pre-sentence report? I think again, Judge, that it would be required at sentencing under Gaul, for the guideline range to be correctly calculated in court, this is something where even though it is pretty clear that the calculation could have easily been done, it wasn't, and that's a procedural error, downs says that's reversible error, and so that's an additional reason to reverse. I have nothing further unless the panel has questions. Thank you. I see nothing further. Thank you very much. Thanks to both counsel. We'll take the case under advisement. The court will be in recess.